**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| GABRIELA BOGNER, ELLEN HILLIARD, CARLY RODRIGUEZ, BRITTANY WILLIAMS, DOMINIQUE SOTELO, MARIAH LAIN, EDUARDO GARCIA and LATOYA MENDEZ individually and on behalf of those similarly situated, | § § § § § § § § | |
| **Plaintiffs,** | § § | |
| v. | § § | **CIVIL ACTION NO.  14-CV-189** |
| RIO EQUITY, LLC and NATIN "NATE" PAUL, | § § § | **JURY TRIAL DEMANDED** |
| **Defendants.** | § § | |

**PLAINTIFFS' SUBSTITUTED COMPLAINT**

Pursuant to 29 U.S.C. §216, and Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Gabriela Bogner, Ellen Hilliard, Carly Rodriguez, Brittany Williams, Dominique Sotelo, Mariah Lain, Eduardo Garcia and Latoya Mendez (the "Plaintiffs"), individually and on behalf of those similarly situated, file this their Substituted Complaint against Defendants Rio Equity, LLC ("Rio") and Natin "Nate" Paul ("Paul"), as follows:

## I.     OVERVIEW OF ACTION

1.     Plaintiffs are former servers or bartenders who worked at Rio Rooftop, an upscale nightclub and lounge located at 601 Rio Grande in Austin, Texas.  Plaintiffs, primarily young, local college students working their way through school, bring this lawsuit against their former employers—Rio Equity, LLC and its owner Nate Paul—for essentially stealing their tips in blatant violations of federal wage laws, and for theft, conversion and unjust enrichment under Texas common law.  Defendants operate a corrupt enterprise that has shamelessly exploited its

employees by not only failing to comply with federal minimum wage laws, but (most egregiously) misappropriating hundreds of thousands of dollars in tips paid by Rio's extraordinarily generous high-end clientele to benefit these young people.  By economically exploiting Plaintiffs and disregarding state and federal wage laws, Defendants have sought to enrich themselves while depriving the more vulnerable Plaintiffs of their rightfully earned tips and wages.  To prevent discovery of these practices, Defendants have altered Rio's books and developed a culture of fear, exploitation and intimidation, pressuring employees to violate TABC liquor laws (including routinely selling liquor after permitted hours) and threatening retaliation for those employees who do not "play along" or dare speak out about Defendants' corrupt practices.  Plaintiffs--now outside the coercive atmosphere they experienced as Rio employees--hereby seek to vindicate their rights and the rights of all current and former similarly situated employees of Defendants.

2.      Specifically, Plaintiffs, on behalf of themselves and those similarly situated, bring this collective action against Defendants for violations of the Fair Labor Standards Act ("FLSA").  Defendants violated the FLSA by (1) unlawfully retaining tips as a part of an invalid mandatory tip pooling scheme, (2) appropriating tips owed to Plaintiffs in part by artificially "converting" them on Rio's books to company sales which were retained by Rio, (3) failing to pay minimum wages due to their failure to give Plaintiffs proper notice of Defendants' intent to use a tip-credit against payment of minimum wages, and (4) failing to pay minimum wages for time spent by Plaintiffs in training and other work "off the clock" and without pay, including weekly marketing events.  Under federal law, Plaintiffs seek disgorgement of the tips unlawfully retained or converted, actual damages equal to unpaid minimum wages, liquidated damages, costs, interest and attorneys' fees.

3.      Likewise, Plaintiffs, on behalf of themselves and those similarly situated, bring state law claims as a Federal Rule 23 class action complaint against Defendants for violation of the Texas Theft Liability Act, conversion and unjust enrichment for Defendants' flagrant theft of Plaintiffs' rightfully earned tips.  Plaintiffs seek damages in the amount of all wrongfully withheld tips, punitive damages, and attorneys' fees.

## II.      PARTIES

4.      Plaintiffs Gabriela Bogner ("Bogner"), Ellen Hilliard ("Hilliard"), Carly Rodriguez ("Rodriguez"), Brittany Williams ("Williams"), Dominique Sotelo ("Sotelo"), Mariah Lain ("Lain"), Eduardo Garcia ("Garcia") and Latoya Mendez ("Mendez") (collectively, the "Named Plaintiffs") are individuals residing in Travis County, Texas.  The Named Plaintiffs are "employees" within the meaning of 29 U.S.C. §206(a).

5.      Rio is a Texas limited liability company doing business as "Rio Rooftop" and "Rio" with its principal place of business in Austin, Texas.  Rio can be served with process by serving its registered agent, National Corporate Research, Ltd., at 800 Brazos, Suite 400, Austin, Texas 78701.

6.      Paul is an individual residing in Travis County, Texas.  Paul may be served with process at his residence at 43 Rainey Street, Apartment 2902, Austin, Texas 78701; or at his alternative residence at 7800 Cava Place, Austin, Texas 78735; or wherever he may be found.

## III.      JURISDICTION AND VENUE

7.      This Court has proper jurisdiction under 28 U.S.C. §1331 because this action involves a federal question pursuant to the FLSA.  *See* 29 U.S.C. 216(b).  This Court has supplemental jurisdiction over Plaintiffs' state law claims, since they are so related to Plaintiffs'

FLSA action within this Court's original jurisdiction such that they are part of the same case or controversy under Article III of the United States Constitution.

8.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because, among other things, a substantial part of the events giving rise to these claims accrued in this district.

## IV.    FACTUAL ALLEGATIONS

9.      The Named Plaintiffs bring their FLSA claims for relief as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of themselves and all tipped, hourly servers, bussers and bartenders employed by Defendants at Rio since its first day of business (believed to be May 25, 2013) who elect to opt-in to this action.  The Named Plaintiffs also bring class action claims for theft, conversion and unjust enrichment under Texas common law on behalf of this same group of similarly situated employees, regardless of whether they elect to opt in.  At all relevant times, the Named Plaintiffs and these other similarly situated employees (collectively "Plaintiffs") have been similarly situated, have had substantially similar job requirements and pay provisions, and have been similarly subject to Defendants' illegal policies and practices as explained below.

## A.    THE PARTIES

10.     Rio markets itself as "a multi-faceted venue with a rooftop lounge and restaurant that offers guests 2 floors of world-class hospitality and entertainment."  Rio boasts a rooftop swimming pool for bar patrons with cabanas alongside the pool available for evening rentals. Since it opened over Memorial Day weekend in 2013, Rio has quickly climbed to the top of the list of Austin venues with alcoholic beverage sales.  Indeed, after being open just over a month, the *Austin American Statesmen* reported that Rio had become the city's top alcoholic beverage

seller – with an estimated $655,164 worth of beer, wine and mixed drinks sold during its first full month of operations in June 2013.

      11.    Rio is owned by an entity formed by Paul, who is the President and CEO of World Class Capital Group, LLC (a real estate investment firm located in Austin, Texas).   Paul has the power to hire and fire Rio employees, supervise and control work schedules of Rio employees, determine rates and methods of payment for Rio's employees and maintain employment records for Rio's employees.   At all relevant times, Paul was acting directly or indirectly in the interest of Rio in relation to the Plaintiffs.   In light of the foregoing, Paul (along with Rio) is an "employer" within the meaning of 29 U.S.C. § 203(d).

      12.    Bogner, Hilliard, Rodriguez, Williams and Sotelo are former bottle or cocktail servers who worked at Rio.  Lain, Garcia and Mendez are former bartenders who worked at Rio.

**B.**    **D**EFENDANTS' **V**IOLATIONS

      13.    Defendants wrongfully denied Plaintiffs full payment of their rightfully earned tips through several schemes.  First, in violation of federal law, the "house" retained (and continues to retain) a large portion of the tips earned by Rio's tipped employees through implementation of various invalid mandatory tip pooling policies.  Under the FLSA, an employer is prohibited from sharing in its employee's tips, and an employee cannot consent to the employer sharing in the employee's tips.   Second, Defendants often purported to re-book customer-directed tips owed to the Plaintiffs by reclassifying them as company sales (thereby unlawfully retaining them).  Defendants also failed to give Plaintiffs proper notice that Rio was using a tip-credit to offset wages, yet paid them at the tip credit hourly rate of $2.13.[1]   Finally,

---

[1]     The FLSA provides that employers must pay employees a statutory minimum wage.  For tipped employees, an employer may pay a tipped employee $2.13 per hour (i.e. the tip credit rate) if (1) the employer informs the employee of the "tip credit" provisions, and (2) all tips received by the employee are actually retained by the employee (or shared with employees who customarily and regularly receive tips through a valid tip pool).

Defendants failed to pay the Plaintiffs the required wages, including tips, for time spent in training and for certain mandated marketing activities called "reach outs."  More detail concerning these particular violations follows below.

> 1.  **Defendants' Unlawful Tip-Pooling Practices**

14.  ***Rio's High-End Customer Base and Tipping Opportunities for Tipped Employees.***  Rio actively seeks out a very high-end client base to support its "bottle service" offerings on its rooftop poolside lounge.  Because Rio offers (among other beverages) bottles of liquor and champagne costing hundreds (or even thousands) of dollars each, a customer's tab after visiting Rio often reaches four or five figures.  Indeed, some of Rio's more wealthy patrons regularly accumulate and pay tabs of many thousands of dollars.  In doing so, these patrons have directed that servers and bartenders (like Plaintiffs) receive gratuities of several thousand or even tens of thousands of dollars.

15.  Rio's servers and bartenders, however, never saw the vast majority of these tips reflected on their paychecks or otherwise paid to them.  When questioned, Plaintiffs were given evasive, inconsistent and varying explanations as to why such tips were not fully paid to Rio's tipped employees, and why the "house" was entitled to keep a portion of these generous tips.

16.  ***Defendants' Varying Tip-Pooling Policies.***  Defendants' characterization of gratuities on sales receipts varied over time.  Generally, Rio imposed a standard 20% gratuity (sometimes described as a "service charge" on a customer's tab), although it permitted its customers to exercise their discretion and voluntarily tip a different (higher or lower) amount. From its inception, Rio recognized these charges as tips which were earned by its tipped employees, and implemented varying policies on how these tips were to be pooled and distributed, but always including some amount that was to be appropriated by the "house" or

management. Indeed, Rio's May 2013 "Employee Handbook," which utilizes the terms "tips" and "services charges" interchangeably, provides for distribution of tips for tabs less than $20,000 as follows: 55% to servers, 20% to bussers, 5% to bartenders with the 20% remainder retained by the "house." For tabs in excess of $20,000, the "house" appropriated another 10% of the tips at the expense of the servers. Rio's actual practices did not necessarily follow these stated arrangements consistently, and the division of tips—per Paul's orders—became more discretionary and arbitrary over time, especially for larger tips. To assure that management had an opportunity to manipulate the handling of tips on large tabs (and to seize such amounts), the Handbook actually required servers to provide all tabs over $5,000 to a manager (for inspection and processing as set forth below).

17. ***Defendants' Unlawful Retention of Tips.*** As noted, the paychecks received by Plaintiffs every other week, which were supposed to include their shares of pooled tips earned during their shifts, never reflected the full amount of tips earned. Management, directed by Paul, appeared to subjectively decide on a case by case basis how much of the tip pool would be distributed and how much the "house" "deserved" to retain at the expense of the service personnel. It appeared that at best Defendants were paying out only 1/3 to 1/2 of the tips left to Plaintiffs—with some unknown percentage retained by "the house" or otherwise misdirected. Because the nightly point-of-sale ("POS") reports for each server and bartender showed how much each had earned in credit card tips during a given shift, Plaintiffs were able to gain some understanding of how much should have been reflected on their paychecks from credit card tips, but the paychecks and POS reports did not reconcile. Like charged tips, the significant cash tips often left for service personnel (which were required to be turned over to management each day) were never fully reflected on the Plaintiffs' paychecks.

18.     Several examples of the most egregious instances where Defendants misappropriated tips rightfully belonging to Plaintiffs involve one of Rio's best customers who regularly left numerous particularly generous tips for Rio's servers and bartenders.  For example, on August 2, 2013, this customer added a tip of over $11,000 to one tab, and later that evening, added a tip to another tab in the amount of $10,000.  On August 18, 2013, this customer handwrote in a tip of over $2,800.  On October 13, 2013, this customer closed out a similarly high tab, and included an enormously generous tip of at least five figures (and perhaps even six figures).  The tipped employees who earned these tips saw only a small fraction of their money flow through to their paychecks, with Rio retaining the balance.  Plaintiffs have copies of some of the supporting documentation for these transactions (including photographs taken of some of these tabs by some of the Named Plaintiffs before these tabs were seized by Defendants).

19.     Plaintiffs estimate that Rio's management misappropriated all but a small fraction of the large tips left by high value customers, even though the tips belonged to the service employees under applicable law since these patrons clearly intended that the servers and bartenders would receive them.  The examples above are merely representative, and by no means reflect the entirety of the tips misappropriated by Defendants.  Indeed, Defendants' wrongful retention of tip income of the 2013 Formula One weekend in Austin was particularly egregious – with substantial misappropriations that weekend alone.

20.     In short, with these policies and practices, Defendants unlawfully participated in the tip pooling arrangements and, in doing so, wrongfully retained for themselves hundreds of thousands of dollars in tips from the servers, bussers and bartenders they employed. Although the precise percentages and dollar amounts of tips withheld from the Plaintiffs are not fully known due to Defendants' retention of supporting documentation and refusal to make it available to

their victims, Plaintiffs estimate that the aggregate amount of tips wrongfully withheld by Rio from its tipped employees—Plaintiffs—has already exceeded $500,000 in the nine short months it has been in operation.

21.     ***Defendants' Practice of Falsely Booking Tips as Sales***.   Generally, when a customer had accumulated a substantial bill that would likely result in a substantial gratuity management took advantage of the policy obligating the server to bring such bills to their attention.   In such cases, Paul or other management personnel (rather than the server who had been attending to the customer throughout that customer's visit to Rio, as was the customary practice) would prepare the bill, process the customer's credit card, obtain the customer's signature and gratuity, and finalize the sale (excluding the server from the process in order to conceal the details of their actions).   Plaintiffs believe that on these occasions Defendants converted a significant portion of the customer-directed gratuity into a sale (or another entry) in the POS system, thus concealing the fact that Defendants were converting the servers' gratuities. Indeed, Defendants are believed to have utilized this practice in connection with some of the generous tips provided by customers.

### 2.     Defendants' Failure to Give Proper Notice of Tip-Credit Election

22.     Defendants never informed any of the Plaintiffs that Defendants were using a tip-credit to offset their minimum wage payment obligations.   Although Defendants presented a handbook to employees during an August 2013 staff meeting, which contains provisions describing the tip-credit, Defendants never explained that policy to Plaintiffs.   This failure to give proper notice of the use of a tip-credit precludes Defendants from being able to take advantage of the tip-credit provisions of the FLSA.

3.     **Additional Wage Violations: Uncompensated Training and "Off the Clock" Activities**

23.     Finally, Defendants' policies required Plaintiffs to work at times without any pay. Defendants maintain a policy that designates a new server's or bartender's first shifts as "training" for which they earn no hourly wages and no gratuities.  Many, if not all, of the Plaintiffs also never received any wages for time spent setting up and cleaning the bar and restaurant, and for periodic mandatory employee meetings.  Frequently (and in direct violation of Texas law), Defendants regularly required Plaintiffs to remain at work past their scheduled shifts (and legally mandated closing time as a TABC permittee) and serve alcohol to Rio's wealthy patrons well into the night and early morning.  In order to conceal their improper operating hour violations, Plaintiffs were sometimes required to "clock out" before they were actually allowed to stop work and leave the premises.  Again Plaintiffs were not paid for these mandatory "after hours" shifts.  Additionally, Defendants regularly required many of the Plaintiffs to engage in marketing activities called "reach outs," where selected servers and bartenders would be required to visit other competitive bars in town in an attempt to recruit customers for Rio.  The Plaintiffs who participated in these activities were not permitted to clock in for the time spent doing "reach outs," and they never received any pay for this mandatory work activity.

C.     THE PROPOSED CLASS

24.     The Named Plaintiffs intend to seek conditional certification for the collective class consisting of all former or current servers, bussers and bartenders employed by Defendants since Rio's first day of business (believed to be May 25, 2013).  This collective class is readily ascertainable.  For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants' records.  Notice can be provided to the collective class Plaintiffs via first class mail or email to the last address known to Defendants.

## V.      PLAINTIFFS' FLSA CLAIMS
### (Violations of 29 U.S.C. § 201, *et seq.*)

25.     During their employment of Plaintiffs, Defendants required Plaintiffs to participate in an unlawful tip-pooling scheme that resulted in Defendants' retention of gratuities earned by the Plaintiffs, in violation of 29 U.S.C. § 203(m).  Defendants are not employees who customarily and regularly receive tips, but are employers as defined by the FLSA and are therefore ineligible for any share of a tip pool.  Moreover, Defendants unlawfully retained significant portions of the tips intended for the Plaintiffs even in violation of Defendants' own invalid tip pooling policies.  Defendants also unlawfully rebooked tips as sales, in an effort to conceal their wrongful retention of tips belonging to Rio's servers, bussers and bartenders. Additionally, as explained above, Defendants required Plaintiffs to work hours for which they were not paid the required minimum wage.

26.     Defendants' wrongful retention of Plaintiffs' tips and non-payment of wages was willful and part of a single policy or practice perpetuated by Defendants.  The Plaintiffs therefore seek and are entitled to recover their actual damages (consisting of unpaid wages and unlawfully retained gratuities), an additional equal amount as liquidated damages, reasonable attorneys' fees, and court costs.

## VI.      RULE 23 CLASS ACTION ALLEGATIONS

27.     Plaintiffs bring their state law claims for violation of the Texas Theft Liability Act, conversion and unjust enrichment pursuant to Rules 23(a), (b)(1) and (b)(3) of the Federal Rules of Civil Procedure on their own behalf and on behalf all servers, bussers and bartenders employed by Defendants since Rio's first day of business (believed to be May 25, 2013) (the "Class Members").

A.      DEFENDANTS' THEFT OF PLAINTIFFS' TIPS

28.     As explained above, Defendant Paul, at all relevant times, acted on behalf of Defendant Rio, which Paul controls.  As detailed above, Defendants, at Paul's express direction, systematically and illegally retained a significant percentage of the cash and credit card tips left to Plaintiffs by Rio's customers and owned by Plaintiffs.  Such conduct violates the Texas Theft Liability Act, constitutes conversion under Texas law, and unjustly enriched Defendants at Plaintiffs' expense.

B.      CLASS ACTION REQUIREMENTS

29.     *Numerosity.*  The persons in the class are so numerous that joinder of all members would be impracticable, and the disposition of their claims as a class would benefit the parties and the Court.  Further the persons in this class are primarily persons of limited financial means without the ability to institute individual lawsuits.  Upon information and belief, the number of participants in the proposed class likely exceeds 40; the precise number of such persons is presently within the sole control of Defendants.

30.     *Commonality.*  There are common questions of law and fact affecting the class.  Specifically, predominant common questions include:

        a.      Whether the gratuities left by Rio's customers constituted the personal property of Plaintiffs;

        b.      Whether Plaintiffs had a possessory interest in those funds;

        c.      Whether Defendants unlawfully stole or exercised dominion over Plaintiffs' tips;

        d.      Whether Defendants did so with the intent to deprive Plaintiffs of those funds; and

        e.      Whether Defendants hold money that belongs to Plaintiffs in equity and good conscience.

31.     *Typicality.*  The claims of the Named Plaintiffs as class representatives are typical of the claims of all class members, and the relief sought is typical of the relief that would be sought by each member of the class in separate actions.  Specifically, the class representatives and all class members were subject to the same corporate policy and practice of Defendants, as alleged above, of illegally retaining some portion of Plaintiffs' tips.  Further given the nature of Defendants' illegal tip pooling policies, each discrete action impacted all Plaintiffs identically. This policy and practice affected all class members similarly, and Defendants benefited from the same type of wrongful conduct as to each class member.   Accordingly, all class members suffered the same injury, namely theft of their rightfully earned tips, and all class members are therefore entitled to damages in the amount of all wrongfully withheld tips.

32.     *Adequacy of Representation.*  The above-identified representatives are adequate representatives of the class because: (1) they are members of the proposed class; (2) they are willing and able to represent the proposed class and have every incentive to pursue this action to a successful conclusion; (3) their interests are not adverse to those of the other proposed class members; (4) they are entitled to damages in the amount of all wrongfully withheld tips, just as all proposed class members; and (5) they are represented by counsel fully capable of litigating class action claims. The attorneys for the Named Plaintiffs (i.e. the class representatives) are experienced and capable in the field of commercial litigation and employment law and will actively conduct and be responsible for advancing and prosecuting the Named Plaintiffs' suit, including that of the representative parties and all class members.  Class counsel have adequate resources through their law firm to devote to the prosecution of these claims.  The undersigned counsel request appointment as class counsel.

33.     *Adjudication of Individual Claims Dispositive of other Class Members' Claims.* As a practical matter, the litigation of the questions of fact and law involved in this action will resolve the rights of all members of the class.  Specifically, if Defendants' conduct is found to violate Texas law with respect to one member of the class, that conduct would likewise be deemed unlawful with respect to all other members of the class, who are similarly situated, and who were subject to the identical corporate policy and practice of misappropriating a portion of Plaintiffs' earned tips.

34.     *Common Questions of Law and Fact Predominate.*  The questions of law and fact involved in the Named Plaintiffs' state law class action claims are common to all Class Members.  Indeed, upon information and belief, there are no legal or factual questions affecting the individual Class Members that do not also affect the Class as a whole.

35.     *A Class Action is the Superior Method for Adjudicating this Dispute.*  A class action is superior to other available methods for the fair and efficient adjudication of this dispute for several reasons.  First, the Class Members individually lack the financial resources to vigorously prosecute their claims against Defendants.  Class treatment will permit a large number of similarly situated plaintiffs to pursue their common claims in a single forum simultaneously and efficiently, without the expense and unnecessary duplication of efforts that numerous individual actions would bring.  Second, important public interests will be served by resolving this matter as a class action.  Adjudication of individual claims would result in a great expenditure of Court and public resources, while addressing Plaintiffs' claims as a class action will result in significant conservation of these resources.  Finally, the issues in this action will be decided by means of common, class-wide proof, including Plaintiffs' time, payroll and other

employment records and Defendants' sales receipts, POS reports and other records of gratuities paid by Rio's customers that rightfully belong to the Plaintiffs under applicable law.

C.    THE PROPOSED CLASS

36.    Plaintiffs seek certification of the Class Members, who are readily ascertainable. The number and identity of the Class Members are determinable from Defendants' records.  The hours assigned and worked, the positions held, and the tips earned by each Class Member are also determinable from Defendants' records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under Rule 23.

## VII.    CLASS ACTION CLAIMS

A.    VIOLATION OF THE TEXAS THEFT LIABILITY ACT, TEX. CIV. PRAC. & REM. CODE § 134.001, *et seq.*)

37.    Plaintiffs had a possessory right in the tips left by Rio's customers for the benefit Plaintiffs. Defendants, without Plaintiffs' consent, unlawfully appropriated a significant portion of the tips left for Plaintiffs by Rio's customers by withholding said tips from Plaintiffs at the end of their shifts and failing to include the vast majority of these tips on Plaintiffs' bi-weekly paychecks.  Such conduct constitutes a violation of Texas Penal Code § 31.03.

38.    Defendants unlawfully retained Plaintiffs' tips with the intent to deprive the Plaintiffs of their interests therein.  Specifically, Defendants took these tips to benefit themselves and to Plaintiffs' detriment.   As a result of Defendants' uniform policy and practice of unlawfully appropriating significant portions of Plaintiffs' tips, Plaintiffs have suffered damages.

39.    Plaintiffs hereby seek damages in the amount of all unlawfully retained tips, punitive damages, pre- and post-judgment interest, and attorneys' fees as allowed by TEX. CIV. PRAC. & REM. CODE § 134.005(b).

**B.**   <u>CONVERSION</u>

40.     Plaintiffs owned or had a right to immediate possession of all tips left by Rio's customers to Plaintiffs.  Such tips constituted the personal property of Plaintiffs in that they were intended by the customer to benefit Plaintiffs.  When a person designates a particular use of proceeds from a check, the proceeds count as specific chattel capable of conversion.  Here, Plaintiffs' tips were delivered to Defendants by Rio's customers for safekeeping for Plaintiffs in the form of cash or a signed bill, expressly including a tip.  These tips were intended to be kept segregated in an intact fund for distribution to the Plaintiffs, and were not the subject of a title claim by Defendants.

41.     Defendants wrongfully exercised dominion or control over Plaintiffs' tips by withholding said tips from Plaintiffs at the end of their shifts and failing to include the vast majority of these tips on Plaintiffs' bi-weekly paychecks.

42.     Defendants acted with malice when they intentionally, and with wanton disregard of Plaintiffs' rights, refused to distribute Plaintiffs' tips to them and used such tips for the exclusive benefit of Rio and Rio's owners. As a result of Defendants' unlawful conduct, Plaintiffs have suffered injury. Plaintiffs seek damages in the amount of all unlawfully withheld tips, including damage for loss of use during Defendants' unlawful retention of Plaintiffs' tips, exemplary damages, court costs, and interest.

**C.**   <u>UNJUST ENRICHMENT</u>

43.     Defendants obtained the benefit of Plaintiffs' tips by unlawfully retaining and refusing to distribute said tips to Plaintiffs.  Defendants unduly took advantage of Plaintiffs in doing so as both Rio's customers and Plaintiffs expected and intended that such tips would be

distributed to Plaintiffs in exchange for Plaintiffs' services.  Accordingly, Defendants were unjustly enriched through their unlawful conduct.

44.     Plaintiffs seek disgorgement of all tips left to Plaintiffs by Rio's customers and wrongfully retained by Defendants.

## VIII.   JURY TRIAL REQUESTED

45.     Plaintiffs hereby request a jury trial.

## IX.     PRAYER FOR RELIEF

WHEREFORE, the Named Plaintiffs respectfully request that this Court certify this action as a collective action under the FLSA with respect to Plaintiffs' FLSA claims, and certify this action as a Rule 23 class action with respect to Plaintiffs' state law claims.  The Named Plaintiffs also request court-supervised notice to be issued for the Class Members as to both the collective and class actions certified:

   a.     Designating this action as a collective action on behalf of the Collective Plaintiffs (asserting FLSA claims) and promptly issuing notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action, and designating the Named Plaintiffs as Representatives of the Plaintiffs for purposes of this collective action.

   b.     Designating this action as a class action on behalf of the Plaintiffs (with respect to the state law claims), and designating the Named Plaintiffs as Representatives of the Class Members.

The Named Plaintiffs further request that after trial before a jury of these causes of action, the Court award judgment against Defendants, jointly and severally, as follows:

   a.     Actual damages;

   b.     Liquidated damages;

   c.     Punitive damages;

   d.     Reasonable attorneys' fees;

e.      Costs of court;

f.      Pre-judgment and post-judgment interest to the extent permitted by law; and

g.      Such other and further relief, in law or in equity, to which the Plaintiffs may show themselves to be justly entitled.

Respectfully Submitted,

FRITZ, BYRNE, HEAD & HARRISON, PLLC
98 San Jacinto Blvd., Suite 2000
Austin, Texas  78701-4288
Telephone:  (512) 476-2020
Facsimile:  (512) 477-5267


By: _/s/ Kevin W. Brown_____
     Daniel H. Byrne
     State Bar No. 03565600
     dbyrne@fbhh.com
     Kevin W. Brown
     State Bar No. 24045222
     kbrown@fbhh.com
     S. King
     State Bar No. 24067708
     aking@fbhh.com
     Ariel Henderson
     State Bar No. 24074392
     ahenderson@fbhh.com

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on this __ day of April, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filings to all parties of record.


/s/ Kevin W. Brown_____
Kevin W. Brown